Opinion delivered January 12, 1874, by
Walker, J.
Joseph Yarnall, the administrator of Francis Yarnall, deceased, filed his final account in the Orphans’ Court of Schuylkill County, on the 3d of February, 1872, showing a balance in his hands, due the heirs, of $5,032.57.
On June 3, 1872, it was confirmed nisi, and on September following, absolutely. On December 2, 1872, an auditor was appointed to make distribution of the money, and after due notice, as required by the rules of court, filed his report on March 3, 1873.
After payment of some claims and expenses, the auditor distributed the money to Joseph Yarnall, Jane Yarnall, Anna Yarnall, and Sydia Yarnall, four of the children, and to William H. Yar- *63 nail, a grandchild representing his deceased father, a child of Francis.
The auditor rejected the claim of Isaac Derr and also of Horace A. Connelly, an illegitimate child of Julia Ann Yarnall, an unmarried *daughter of Francis Yarnall, who died in 1858, and prior to her father. Francis Yarnall died intestate in 1869.
Exceptions to the confirmation of this report were filed March 4, 1873, by Isaac Derr, guardian of Horace A. Connelly and John W. Derr, and are as follows:
1st. The auditor was the attorney of the administrator in the settlement of the estate, and was therefore incompetent to act as auditor.
2d. The auditor erred in rejecting the claim of John W. Derr, constable. He should have allowed the claim, and awarded the amount claimed by said John W. Derr to him out of the fund for distribution.
3d. The auditor erred in deciding that Horace A. Connelly, a child of Julia Ann Yarnall, a daughter of the decedent, was not entitled to a distributed share of the estate.
The first exception is to the competency of the auditor on the ground that he was attorney for the administrator.
There is no allegation that he acted unfairly in the premises. The high and unimpeachable character of the auditor is a sufficient guarantee that this was not done. To be sure the auditor had been the attorney for the administrator—but the administrator had previously filed his account, which account had been confirmed by the court.
The account was not surcharged, and the evidence shows no attempt to surcharge it. No conflict of duty between the administrators and the heirs could arise.
Besides, when the auditor was appointed on 2 December, 1872, there was no objection to his appointment appearing of record, certainly no exception was filed to it then.
The present exception was only taken after his report was filed ruling adversely to the exceptant. In a legal point he was too *64 late. He took his chances for the money, and failing excepts to the competency of auditor making the report.
Then again Mr. Spinney passed on no facts that were controverted. He ruled only questions of law that are now before us, and for which (should we err) the exceptant has a perfect legal remedy.

The exception, therefore is entirely unfounded.

The 3d exception refers to the promise of the administrator to indemnify the constable in charge of the execution. And the auditor finds from the evidence that it was a verbal promise, and related only to things to be done by the constable within the scope of his duty and power as constable charged with the writ.
If the officer became a trespasser, and transcended his authority, the bail would not be liable, and if lie were his personal liability could not affect the estate for which he acted.
*No authority is required to be cited to sustain the ruling of the auditor upon this point.
The 3d exception refers to the law of descent and to the capacity of illegitimates to inherit.
Can Horace A. Connelly, an illegitimate son of Julia Ann Yarnall (who died before her father), inherit his mother’s portion of the estate from his grandfather Francis Yarnall?
This is the only question of importance in this case, and the answer is simple.
A bastard at common law cannot be heir to any one, neither can he have heirs but of his own body, for being mdlius fillius he is therefore kin to nobody, and has no ancestor from whom any inheritable blood can be derived. 1 Black’s Com. 459.
Under the provisions of the Act of April 27, 1855 (Pen. Dig. 810, pl. 40), illegitimate children shall take and be known by the name of their mother, and they and their mother shall respectively have capacity to take or inherit from each other personal estate as next of kin, and real estate as heirs in fee simple, and as respects said real or personal estate so taken and inherited to transmit the same according to the intestate laws of the State.
An illegitimate child therefore can inherit from no one except *65 his mother, and from her he may inherit equally with her legitimate children. Opdyke’s Appeal, 13 Wright, 373.
He cannot inherit from his father or his grandfather. Neither can he take from his grandfather, by virtue of the intestate law of 1833, by representation, for that Act relates only to children born in lawful wedlock, and the language of the 17th section exclusively confines its operation to legitimate children.
Horace A. Connelly therefore as the grandchild of the intestate is governed by the common-law doctrine, and is not aided by the statute above referred to.
He is not even rendered legitimate. So special and restricted is the language of the Act, that an illegitimate child cannot transmit to his heirs by inheritance any other property than such as he derived from his mother. Grubb’s Appeal, 8 P. F. S. 55.
In this case Julia Ann died twelve years before her father, consequently at her death she had no vested interest in this fund, and she was not his heir, for nemo est haeres viventis.
She could only transmit what she possessed (which was nothing so far as it related to this money), and her child therefore took nothing.
*The restricted interpretation which the Supreme Court have placed irpon the language of the Act of 1855, removes every difficulty and makes the application of the law to the facts of this case perfectly clear and simple.
A still stronger illustration of this principle is enunciated in Steckel’s Appeal, 14 P. F. S. 493, where it is held that when a bastard dies before his mother, he cannot transmit a right from her to his children. This seems like hard law.
The learned opinion of Judge Butler in Grubb’s Appeal, 8 P. F. S. 55, thoroughly explains this doctrine.
There is really no difficulty in this case since these decisions.
The auditor was therefore right also on this point.
Exceptions overruled and the report of the auditor is confirmed.